# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1568 | **DATE** | 10/29/2002 |
| **CASE TITLE** | DAVID H. SITRICK vs. FREEHAND SYSTEMS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/13/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Freehand's motion to dismiss [6-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | OCT 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| David H. Sitrick | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 1568 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzman |
| Freehand Systems, Inc. | ) | |
| a Nevada Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, David H. Sitrick ("Sitrick"), an Illinois resident, filed a patent infringement complaint against Defendant Freehand Systems, Inc. ("Freehand"). Freehand moves to dismiss Sitrick's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, Freehand's motion to dismiss is denied.

### BACKGROUND FACTS

The patents at issue relate to the centuries old problem of turning the pages of a musical score while playing a musical instrument. Sitrick is the owner of U.S. Patent No. 5,728, 960 and U.S. Patent No. 6,084, 168. These patents relate to an electronic music stand capable of displaying musical compositions on a flat screen, such as an LCD screen.

Defendant Freehand was founded in 2001 as a Nevada corporation, and is also developing an electronic sheet music viewer. Freehand currently leases one office in Los

1

19

Altos, California and has four employees, all of whom are California residents. Freehand has no property in Illinois, and does not maintain any sales representatives, addresses, or bank accounts in the state. Freehand maintains a "passive" website describing its products and maintaining a toll-free number for more information. Freehand declares and it is undisputed that the website is not explicitly directed to consumers in any one state.

Freehand is developing two products, MusicPad Pro and Lyric Viewer. MusicPad Pro is planned to be an electronic sheet music viewer where users can download, scan, store, annotate, and view musical scores. LyricViewer is described as a self-contained touch-screen unit that allows performers to view musical lyrics.

Freehand states that both MusicPad Pro and Lyric Viewer are under development, and currently no products have been manufactured, sold, or shipped. Freehand denies that either product is on sale. However, beginning in December 2001, Freehand has allowed interested persons to "reserve" units from the first production lot of MusicPad Pro devices to be manufactured. Interested persons can place a reservation through a toll-free number, which is displayed on Freehand's website. Reserving persons receive a "Confirmation of Order" which lists the items ordered, along with shipping charges and an estimated shipping date. The person's credit card or check information is retained, although not billed at the time of reservation. To date, Freehand has received reservations for about 30 MusicPad Pro units, including one from Illinois.[1]

---

[1] Freehand correctly points out that the example reservation the plaintiff provides, with shipping information to Illinois, was addressed to Sitrick's attorney. To the extent that this reservation is an attempt at "manufacturing" jurisdiction, the Court gives it no weight. It is not completely clear from the record whether the reservation to Sitrick's attorney is the same reservation

2

In February 2002 Freehand's founder and current president, Michael Hamilton ("Hamilton"), stopped for one day in Chicago, en route to New York, to demonstrate the MusicPad Pro. Sitrick characterizes Hamilton's stop as part of a "nationwide marketing tour" for Freehand's accused product, while Freehand characterizes the stop as merely a "layover" and "fortuitous contact" setup at the request of a Chicago Lyric Opera member, Richard Markley ("Markley").

While each side puts its own spin on Hamilton's trip, the facts are not seriously in dispute. While in Chicago, Hamilton gave two open demonstrations of the MusicPad Pro to members of the Chicago Lyric Opera and the Chicago Symphony Orchestra. Hamilton used one of six functional demonstration models Freehand has produced. During the demonstrations, Hamilton also gave approximately twenty copies of a Freehand sales brochure to Markley. Freehand states that Markley had hoped to obtain a free device in exchange for help in promoting the MusicPad Pro. Some of the Freehand brochures were left in lounge area of the building for other Lyric Opera members.

The brochures contain marketing information about the MusicPad Pro, as well as a picture of the device. They list an "introductory price of $1200", and provide technical data including: memory, screen resolution, operating system and software, battery and power supply, computer system requirements, and optional accessories. The brochures also stipulate a one year warranty and 30 day money back guarantee, as well as provide for an installment payment option using a Visa or MasterCard. They list a toll-free telephone number for ordering the device.

---

from Illinois noted in Mr. Hamilton's declaration. However, as discussed below, other facts readily determine the outcome of this case, and the Court need not sort this issue out at the present time.

Freehand has also given a MusicPad Pro unit to a member of the rock band "Yes", which performed and used the unit in Illinois while on tour. Before giving the MusicPad Pro to the band, Freehand did not discuss with the band where it might be used.

## DISCUSSION

Because this is a patent infringement case, Federal Circuit law rather than Seventh Circuit law is controlling, even in determining the question of whether the exercise of personal jurisdiction is proper. *Hildebrand v. Steck Manufacturing Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Coolsavings.com, Inc. v. IQ Commerce Corp.*, 53 F. Supp. 2d 1000, 1002 (N.D. Ill. 1999). Plaintiff Sitrick has the burden of establishing that the Court has personal jurisdiction over Freehand. *Deprenyl Animal Health, Inc. v. The Univ. of Toronto Innovations Found.*, 297 F.3d 1343 (Fed. Cir. 2002). In determining whether the plaintiff has made a prima facia showing, factual disputes are resolved in the plaintiff's favor. *Id.*

In general, whether or not the exercise of jurisdiction is appropriate over a non-consenting defendant involves a two-step inquiry. First, the defendant must be amenable to process in the forum state. Second, the district court must ensure that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" embodied in the Due Process Clause. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**Amenability to Process**

The Illinois long-arm statute provides for personal jurisdiction over a defendant

4

who performs enumerated acts such as committing a "tort" in the state, but it also provides for personal jurisdiction on "any... basis now hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-209(c). Because the Illinois long-arm statute reaches as far as the limits of due process, the Court need not decide whether this case fits neatly into one of the enumerated acts within the statute; it need only decide whether the exercise of personal jurisdiction over Freehand comports with due process. *Red Wing Shoe*, 148 F.3d at 1355.[2]

**Due Process**

The Federal Circuit has summarized the Supreme Court's personal jurisdiction jurisprudence by applying a three-factor test to determine whether assertion of personal jurisdiction over an out-of-state defendant comports with due process. The factors are: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995). The first two *Akro* factors correspond to the "minimum contacts" prong of *International Shoe Co. v. Washington*,

---

[2] For example, this court need not decide whether Freehand has committed a "tort" in Illinois within the meaning of 735 Ill. Comp. Stat. 5/2-209. Patent infringement is based on a federal cause of action, and the Federal Circuit has frowned upon stretching state common law or statutory definitions in construing personal jurisdiction in patent infringement cases. *See 3D Systems, Inc. v. Aarotech Laboratories, Inc.* 160 F. 3d 1373, 1379 (Fed. Cir. 1998)("[W]hile it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement, which exists solely by virtue of the federal statute, entails the construction of the federal statute and not a state's common or statutory law.")(internal citation omitted). Accordingly, this Court follows Federal Circuit cases in deciding whether the exercise of personal jurisdiction comports with due process, the only necessary inquiry given that the reach of the Illinois long-arm statute is coextensive with the limits of due process.

326 U.S. 310 (1945), and the third *Akro* factor corresponds to the "fair play and substantial justice" prong of *Int'l Shoe*. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

### a. Purposeful Availment

The first *Akro* factor is whether the defendant has purposefully directed its activities at residents of the forum. *Akro*, 45 F.3d at 1545. Freehand's president traveled to Illinois to demonstrate the MusicPad Pro, and while in Chicago, distributed sales brochures to a member of the Chicago Lyric Opera that specifically describe the accused device. In addition, Freehand has advertised the MusicPad Pro in trade journals that circulate in Illinois, and made information on its website accessible to Illinois residents. Freehand's actions, most importantly its marketing efforts in Chicago culminating in an "offer to sell" under 35 U.S. C. § 271(a) (discussed below), were purposefully directed at Illinois, and satisfy the first *Akro* factor.

### b. Related Activity

The second *Akro* factor is whether the cause of action arises out of or directly relates to those activities in the forum state. *Id.* The critical question in this case is whether Freehand's activities in Illinois constituted an "offer to sell" under 35 U.S.C. § 271(a).

While Federal Circuit case law defining "offer to sell" under § 271 is still developing, it is sufficiently advanced to fully guide our analysis here. In *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), the Federal Circuit held that a plaintiff's patent infringement claim arose out of the defendant's activity of mailing brochures, sample parts, and price quotation letters for the accused device to

6

residents of the forum state. In holding that the district court had personal jurisdiction, the court determined that the price quotation letters were an "offer to sell" within the meaning of § 271(a) because they contained specific description of the accused product and the price at which it could be purchased. *Id.* at 1379. In *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999), the Federal Circuit again analyzed an offer to sell in the context of personal jurisdiction, holding that an offer to donate is not the equivalent of an offer to sell under § 271(a). The *Hollyanne* court reserved the question of what level of advertising activity might rise to the level of offer to sell, however in dicta it noted that under § 271(a) an offer to sell contains "the hallmarks of a potential commercial transaction. (i.e., a quotation of price and a product description, or a communication that the item was available for purchase by the intended donee)." *Id.* at 1309-10. In *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000), the Federal Circuit observed that *3D Systems* was still good law in light of the Supreme Court's subsequent decision in *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), and added, consistent with *Hollyanne*, that "we similarly define § 271(a)'s 'offer to sell' liability according to the norms of traditional contractual analysis." *See also Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1360 (Fed. Cir. 2001) (noting that *3D Systems* had defined "offer to sell" under 35 U.S.C. § 271).

The Court finds the analysis in *3D Systems* to be outcome determinative. Like the price quotation letters in *3D Systems*, the brochures that Hamilton personally gave to a member of the Chicago Lyric Opera while in Illinois contained a detailed description of the accused device and its purchase price.

Freehand attempts to distinguish *3D Systems* by arguing an essentially semantic

7

distinction between the sales "brochures" in this case and the "price quotation letters" in that case. Freehand argues that in *3D Systems* jurisdiction was triggered by the "more targeted price quotation letters" sent to forum residents rather than the "brochures, specification sheets, and sample parts." However, the *3D Systems* court was clear in explaining why the price quotations letters rose to the level of offer to sell, stating that "[a]s a matter of federal statutory construction, the price quotation letters can be regard as "offers to sell" under § 271 *based on the substance conveyed* in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased." *3D Systems*, 160 F.3d at 1379 (emphasis added). Because the brochures Freehand distributed to residents in Illinois convey substantively the same information as the price quotations in *3D Systems*, the Court holds that the hand-delivered sales brochures were an offer to sell the MusicPad Pro in Illinois.[3] In both *3D Systems* and in this case, it is clear that the offers to sell were directed at members of the forum state. In *3D Systems* the letters were sent to specific companies in the forum state, *id.*, and in this case Freehand personally brought the sales information for distribution to Illinois residents.

Freehand's arguments that the Chicago demonstrations were a "fortuitous contact" do not alter the fact that Freehand made an "offer to sell" triggering jurisdiction under *3D*

---

[3]The district court opinion Freehand cites as persuasive authority is not the contrary. In *VP Intellectual Properties, LLC. v. Imtec Corp.*, 1999 U.S. Dist. LEXIS 19700 (D.N.J. 1999), the court held that a catalog sent to residents of New Jersey did not constitute an "offer to sell" under 35 U.S.C. §271(a) because there was no evidence it contained a detailed description of the product and the price at which it could be purchased. Unlike *VP Intellectual Properties*, the sales information hand-delivered by Freehand contained both a technical product description and a purchase price with contract information.

8

*Systems* and *Akro*. Freehand was not compelled to come to Chicago to generate interest in its accused product. More importantly, Freehand was not compelled give brochures containing detailed descriptive, pricing, and ordering information about the MusicPad Pro to residents of Illinois during the demonstration. The fact that Freehand's offer did not result in a sale to Markley because Markley was interested in obtaining a free device does not alter that an "offer to sell" was made for purposes of § 271(a). Freehand also gave Markley approximately 20 copies of the sales brochure. Viewing the facts in the light most favorable to the plaintiff, Freehand knew Markley would distribute the materials to other Lyric Opera members, reinforcing Freehand's solicitation to residents of Illinois.[4]

Additionally, Freehand's argument that the brochures cannot be offers to sell because Freehand has no product to sell is entirely unpersuasive. The "reservations" Freehand has taken for the MusicPad Pro give all the indications of an order confirmation, including a total price, shipping information, and are titled "Confirmation of Order." Hamilton's declaration even states that interested persons calling Freehand's toll-free number can be connected with a "sales representative." Maintaining sales representatives standing by to speak with interested callers is quite unusual for a

---

[4]Freehand's citation to cases from this district concerning "promotional activities" are inapplicable to these facts. In *Deering Precision Instruments, LLC v. Vector Distribution Sys., Inc.* 2001 U.S. dist. LEXIS 12491 (N.D. Ill. 2001), the court failed to find specific jurisdiction because all of the defendant's activities in Illinois concerned products other than the accused product. This is unlike the circumstances here, where all of the defendant's activities in Illinois involve the accused products. *Fluid Managment Limited Partnership v. H.E.R.O. Indus., Ltd.*, 1997 U.S. Dist. LEXIS 2728 (N.D. Ill. 1997) is both obsolete and inapplicable. *Fluid Management* was decided before *3D Systems*, and appears to discuss the previous version of 35 U.S.C. §271(a), which did not include "offer to sell." The court was attempting to analyze whether defendant's activities could fall under the infringing "use" provision of §271(a), rather than the "offer to sell" provision.

company that supposedly has no products to sell. Freehand correctly points out that facts argued in Sitrick's brief, such as Freehand's activities at a trade show in California, are extraneous towards establishing jurisdiction in Illinois. A defendant's activities in one state cannot by analogy establish jurisdiction in another. However, treating the sales brochures brought by Hamilton to Illinois as "anything other than offers to sell would be to exalt form over substance. We have consistently held that such exaltation is not appropriate in the due process analysis." *3D Systems*, 160 F.3d at 1379.

Finally, denying that the brochures are offers to sell because Freehand is not in full-scale production of the MusicPad Pro would create a jurisdictional loophole to be exploited by patent infringers. Potential infringers could offer to sell their products nationwide, and remain immune from suit in many forums simply by arguing that the accused product was not in current inventory stock, or that they had not yet inked a supply contract for the last bolt needed to make the accused product. This high-level generation of commercial interest culminating in all but a final sale of the accused product would contravene the established purposes of amending § 271(a) to include offers to sell. *3D Systems*, 160 F.3d at 1379 ("One of the purposes of adding 'offer to sell' to § 271(a) was to prevent exactly the type of activity [defendant] was engaged in, i.e., generating interest in a potential infringing product to the commercial detriment of the rightful patentee.").

**c. Reasonableness**

The third *Akro* factor is whether or not exercise of personal jurisdiction is reasonable and fair. *Akro*, 45 F.3d at 1545. Because this Court finds that Freehand has the requisite minimum contacts with Illinois under the first two *Akro* factors, Freehand has

the burden to demonstrate "a compelling case" that jurisdiction would be unreasonable. *Akro*, 45 F.3d at 1546. Compelling cases are "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

This case is not that "rare situation." Illinois has an interest in protecting its residents from patent infringement. *See id.* Sitrick's choice of Illinois as a forum to litigate his infringement complaint does not mitigate his right to have access to this Court. *Id.* at 1569. Moreover, Freehand's arguments in its reply brief, such as access to information and financial resources are more adequately addressed to a comprehensive change of venue motion. *See Akro*, 45 F.3d at 1546.[5] The Court finds exercise of personal jurisdiction over Freehand to be reasonable and fair, satisfying the third *Akro* factor.

Because the Illinois long-arm statute is coextensive with the limits of due process, and because the exercise of personal jurisdiction comports with due process as determined by the *Akro* factors, Freehand's motion to dismiss for lack of personal jurisdiction is denied.

---

[5]Freehand's original motion is titled "Motion to Dismiss For Lack of Personal Jurisdiction And/Or Proper Venue," however, the motion only argues lack of personal jurisdiction, Without the proper briefing, Freehand's motion for improper venue is denied.

11

## CONCLUSION

For the reasons set forth below Freehand's motion to dismiss is denied (#6-1).

So Ordered  10/29/02

Entered.

Ronald A. Guzman